1
2
3
4
5
6
7
8                      UNITED STATES DISTRICT COURT

9                  FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11   JEREMY JAMISON,                          No.  2:13-cv-1705 AC P

12                   Plaintiff,

13          v.                                 ORDER

14   SAMBRAJYA PALAGUMMI,

15                   Defendant.

16

17          Plaintiff is a state prisoner proceeding pro se and in forma pauperis in this action filed

18   pursuant to 42 U.S.C. § 1983.  The sole remaining defendant in this action is Sambrajya

19   Palagummi, M.D.[1]  This action is proceeding on the Eighth Amendment claim contained in

20   plaintiff's original complaint, filed on August 19, 2004.  Both parties have consented to the

21   jurisdiction of the Magistrate Judge.  ECF Nos. 6 & 21.

22          Plaintiff's Eighth Amendment claim alleges that defendant was deliberately indifferent to

23   plaintiff's serious medical needs.  Specifically, plaintiff alleges that defendant withheld needed

24   treatment for plaintiff's needs by (1) rescinding his ADA status, (2) refusing to order surgery for

25   _____

26   [1]  On October 18, 2013, the court dismissed all other defendants.  Plaintiff was then given the
     option of proceeding against Dr. Palagummi alone, or attempting to amend his complaint.  ECF
27   No. 8.  Plaintiff elected to proceed against Dr. Palagummi alone.  See ECF No. 11 (Notice of
     Submission of Documents for service of process on Dr. Palagummi).

28

                                             1

plaintiff, (3) refusing to provide plaintiff with "soft shoes insoles," (4) refusing to have plaintiff transferred to a medical facility; and (5) refusing to provide plaintiff with proper pain management.  Complaint (ECF No. 1) at 4-5.  Plaintiff seeks relief in the form of monetary and punitive damages as well as injunctive relief.  See id., at 4.

## I. FACTUAL BACKGROUND[2]

Plaintiff is a disabled prisoner living with a seizure disorder and chronic pain.  Complaint at 4-5.  Prior to June 6, 2013, plaintiff was granted "ADA status," used a wheelchair, and took anti-seizure and pain medication.  Id.  On or about June 6, 2013, defendant Dr. Palagummi revoked plaintiff's ADA status and took away his wheelchair.  Id.  She also refused to re-order necessary surgery and soft shoes, and refused to arrange for plaintiff to be transferred to a medical facility where he could get needed physical therapy.  Id.  As a result, plaintiff was left in continuous pain and without proper treatment of his medical needs.  Id.

On June 11, 2013, plaintiff wrote a letter to "Dr. Kim" complaining about his treatment by Dr. Palagummi, asking to have his ADA status restored, to be put back on his seizure and pain medication, to get his operation, to be assigned another primary care doctor, and to be assigned to the medical facility at Vacaville.  Declaration of Debbie Luyster ("Luyster Decl.") (ECF No. 47-4), Exhbit F ("Exh. F") (ECF No. 47-6) at 2-5.[3]  The prison authorities treated this letter as an "appeal" under the prison's regulations, but "cancelled" it – refused to accept the appeal – because it was not on the proper form, California Department of Corrections and Rehabilitation ("CDCR") Form 602.  Luyster Decl. ¶ 6.  Over the course of the next several months, plaintiff submitted many internal appeals on Form 602, all complaining about Dr. Palagummi's treatment of him or otherwise asking for treatment of his medical needs.  Exhs. G-P.  None of these appeals was "exhausted" by merits review at the last (third) level of review.  See Luyster Decl. ¶ 5 (chart).

On August 19, 2013, plaintiff filed this lawsuit, complaining about his treatment by

---

[2]  The following background facts are undisputed for purposes of this summary judgment motion only, and are based upon the allegations in, and reasonable inferences from, plaintiff's verified complaint (ECF No. 1), and the uncontested factual assertions in the Declaration of Debbie Luyster (ECF No. 47-4).

[3]  All references to "Exh. ___" are to exhibits of the Luyster Declaration.

Dr. Palagummi (and others), and asking for injunctive relief and punitive damages.  Defendant

moves for summary judgment, and plaintiff cross-moves.[4]  Plaintiff also moves for an order

directing CDCR to deliver his legal mail promptly.  ECF No. 46.[5]

## II.  DEFENDANT'S SUMMARY JUDGMENT MOTION

Defendant moves for summary judgment solely on the ground that plaintiff failed to

exhaust his administrative remedies within the prison system before filing suit, as required by the

Prison Litigation Reform Act, 42 U.S.C. § 1997e(a).  ECF No. 47.  Plaintiff opposes the motion,

and cross-moves for summary judgment, on the ground that his administrative appeal was not

acted upon for eight (8) months.  ECF No. 53.  The court interprets this to be an argument that

plaintiff was prevented from exhausting his administrative remedies by the prison's failure to act

timely on his appeal.

For the reasons that follow, the court rejects both arguments.  Based upon the undisputed

facts submitted by defendant, and not contested by plaintiff, the court finds that, with one

exception, plaintiff was excused from exhausting his administrative appeals.  By failing to

comply with the governing regulations, the prison's appeals office made it effectively impossible

for plaintiff to exhaust his administrative remedies.  See Albino v. Paca, 747 F.3d 1162 (9th Cir.)

(en banc), cert. denied, 574 U.S. ___ (October 20, 2014) (No. 14-82).  The court will therefore

grant plaintiff's motion for summary judgment on the administrative exhaustion issue.

### A.  Legal Standard for Rule 56 (Summary Judgment) Motions

Summary judgment is appropriate when the moving party "shows that there is no genuine

dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R.

---

[4]  Defendant contemporaneously provided plaintiff with notice of the requirements for opposing a motion pursuant to Fed. R. Civ. P. 56.  See Rand v. Rowland, 154 F.3d 952, 957 (9th Cir. 1998) (movant may provide notice) (en banc), cert. denied, 527 U.S. 1035 (1999), Klingele v. Eikenberry, 849 F.2d 409 (9th Cir. 1988) (district court must provide notice), and Woods v. Carey, 684 F.3d 934 (9th Cir. 2012) (notice must be served concurrently with the motion).  See Defendant's Rand Notice to Plaintiff (ECF No. 47-2).

[5]  CDCR is not a party to this suit, so the court will not issue an order to that entity in this lawsuit.  However, if plaintiff asserts that he has been prejudiced by delayed mail, he should so advise the court so that the court can grant appropriate time extensions, consider motions for reconsideration, or take whatever other action is necessary and appropriate to avoid any prejudice.

1    Civ. P. 56(a).  Under summary judgment practice, the moving party "initially bears the burden of

2    proving the absence of a genuine issue of material fact."  Nursing Home Pension Fund, Local 144

3    v. Oracle Corp. (In re Oracle Corp. Securities Litigation), 627 F.3d 376, 387 (9th Cir. 2010)

4    (citing Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986)).  The moving party may accomplish

5    this by "citing to particular parts of materials in the record, including depositions, documents,

6    electronically stored information, affidavits or declarations, stipulations (including those made for

7    purposes of the motion only), admission, interrogatory answers, or other materials" or by showing

8    that such materials "do not establish the absence or presence of a genuine dispute, or that the

9    adverse party cannot produce admissible evidence to support the fact."  Fed. R. Civ.

10    P. 56(c)(1)(A), (B).

11        When the non-moving party bears the burden of proof at trial, "the moving party need

12    only prove that there is an absence of evidence to support the nonmoving party's case."  Oracle

13    Corp., 627 F.3d at 387 (citing Celotex, 477 U.S. at 325); see also Fed. R. Civ. P. 56(c)(1)(B).

14    Indeed, summary judgment should be entered, after adequate time for discovery and upon motion,

15    against a party who fails to make a showing sufficient to establish the existence of an element

16    essential to that party's case, and on which that party will bear the burden of proof at trial.  See

17    Celotex, 477 U.S. at 322.  "[A] complete failure of proof concerning an essential element of the

18    nonmoving party's case necessarily renders all other facts immaterial."  Id.  In such a

19    circumstance, summary judgment should be granted, "so long as whatever is before the district

20    court demonstrates that the standard for entry of summary judgment ... is satisfied."  Id. at 323.

21        If the moving party meets its initial responsibility, the burden then shifts to the opposing

22    party to establish that a genuine issue as to any material fact actually does exist.  See Matsushita

23    Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).  In attempting to establish the

24    existence of this factual dispute, the opposing party may not rely upon the allegations or denials

25    of its pleadings but is required to tender evidence of specific facts in the form of affidavits, and/or

26    admissible discovery material, in support of its contention that the dispute exists.  See Fed. R.

27    Civ. P. 56(c)(1); Matsushita, 475 U.S. at 586 n.11.  Moreover, "[a] Plaintiff's verified complaint

28    may be considered as an affidavit in opposition to summary judgment if it is based on personal

4

knowledge and sets forth specific facts admissible in evidence." Lopez v. Smith, 203 F.3d 1122, 1132 n.14 (9th Cir. 2000) (en banc).[6]

The opposing party must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome of the suit under the governing law, see Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Assoc., 809 F.2d 626, 630 (9th Cir. 1987), and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the nonmoving party, see Wool v. Tandem Computers, Inc., 818 F.2d 1433, 1436 (9th Cir. 1987).

In the endeavor to establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." T.W. Elec. Serv., 809 F.2d at 631. Thus, the "purpose of summary judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'" Matsushita, 475 U .S. at 587 (citations omitted).

In evaluating the evidence to determine whether there is a genuine issue of fact," the court draws "all reasonable inferences supported by the evidence in favor of the non-moving party." Walls v. Central Costa County Transit Authority, 653 F.3d 963, 966 (9th Cir. 2011) (per curiam). It is the opposing party's obligation to produce a factual predicate from which the inference may be drawn. See Richards v. Nielsen Freight Lines, 602 F. Supp. 1224, 1244–45 (E.D. Cal. 1985), aff'd, 810 F.2d 898, 902 (9th Cir. 1987). Finally, to demonstrate a genuine issue, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts. … Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" Matsushita, 475 U.S. at 587 (citation omitted).

In applying these rules, district courts must "construe liberally motion papers and pleadings filed by pro se inmates and … avoid applying summary judgment rules strictly."

---

[6] Plaintiff filed a verified First Amended Complaint in this case. See ECF No. 1.

1    Thomas v. Ponder, 611 F.3d 1144, 1150 (9th Cir. 2010).  However, "[if] a party fails to properly

2    support an assertion of fact or fails to properly address another party's assertion of fact, as

3    required by Rule 56(c), the court may … consider the fact undisputed for purposes of the motion

4    …." Fed. R. Civ. P. 56(e)(2).

5           B.  Legal Standards for Exhaustion

6                  1.  Prison Litigation Reform Act

7           Because plaintiff is a prisoner suing over the conditions of his confinement, his claims are

8    subject to the Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e(a).  Under the PLRA,

9    "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or

10   any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until

11   such administrative remedies as are available are exhausted."  42 U.S.C. § 1997e(a); Porter v.

12   Nussle, 534 U.S. 516, 520 (2002) ("§ 1997e(a)'s exhaustion requirement applies to all prisoners

13   seeking redress for prison circumstances or occurrences").  "The PLRA mandates that inmates

14   exhaust all available administrative remedies before filing 'any suit challenging prison

15   conditions,' including, but not limited to, suits under § 1983."  Albino, 747 F.3d at 1171 (quoting

16   Woodford v. Ngo, 548 U.S. 81, 85 (2006)).

17          Failure to exhaust is "an affirmative defense the defendant must plead and prove."  Jones

18   v. Bock, 549 U.S. 199, 204 (2007).  "[T]he defendant's burden is to prove that there was an

19   available administrative remedy, and that the prisoner did not exhaust that available remedy."

20   Albino, 747 F.3d at 1172.  "[T]here can be no 'absence of exhaustion' unless *some* relief remains

21   available."  Brown v. Valoff, 422 F.3d 926, 937 (9th Cir. 2005).  Therefore, the defendant must

22   produce evidence showing that a remedy is available "as a practical matter," that is, it must be

23   "capable of use; at hand."  Albino, 747 F.3d at 1171.

24          In reviewing the evidence, the court will consider, among other things, "information

25   provided to the prisoner concerning the operation of the grievance procedure."  Brown, 422 F.3d

26   at 937.  Such evidence "informs our determination of whether relief was, as a practical matter,

27   'available.'"  Id.  Thus, misleading – or blatantly incorrect – instructions from prison officials on

28   how to exhaust the appeal, especially when the instructions prevent exhaustion, can also excuse

the prisoner's exhaustion:

> We have considered in several PLRA cases whether an administrative remedy was "available." In <u>Nunez v. Duncan</u>, 591 F.3d 1217 (9th Cir. 2010), we held that where a prison warden incorrectly implied that an inmate needed access to a nearly unobtainable prison policy in order to bring a timely administrative appeal, "the Warden's mistake rendered Nunez's administrative remedies effectively unavailable." In <u>Sapp v. Kimbrell</u>, 623 F.3d 813 (9th Cir. 2010), we held that where prison officials declined to reach the merits of a particular grievance "for reasons inconsistent with or unsupported by applicable regulations," administrative remedies were "effectively unavailable." In <u>Marella v. Terhune</u>, 568 F.3d 1024 (9th Cir. 2009) (per curiam), we reversed a district court's dismissal of a PLRA case for failure to exhaust because the inmate did not have access to the necessary grievance forms within the prison's time limits for filing a grievance. We also noted that Marella was not required to exhaust a remedy that he had been reliably informed was not available to him.

<u>Albino</u>, 747 at 1173 (page citations omitted).

> 2. <u>California Regulations Governing "Exhaustion" of Administrative Remedies</u>

Exhaustion requires that the prisoner complete the administrative review process in accordance with all applicable procedural rules. <u>Woodford v. Ngo</u>, 548 U.S. 81 (2006). This review process is set forth in California regulations. Those regulations allow a prisoner to "appeal" any action or inaction by prison staff that has "a material adverse effect upon his or her health, safety, or welfare." Cal. Code Regs. tit. 15, § 3084.1(a). An inmate must file the initial appeal within 30 working days of the action being appealed, and he must file each administrative appeal within 30 working days of receiving an adverse decision at a lower level. <u>Id.</u> § 3084.8(b).

The appeal process is initiated by the inmate's filing a "Form 602," the "Inmate/Parolee Appeal Form," "to describe the specific issue under appeal and the relief requested." <u>Id.</u> § 3084.2(a).[7] Each prison is required to have an "appeals coordinator" whose job is to "screen all appeals prior to acceptance and assignment for review." <u>Id.</u> § 3084.5(b); <u>Menefield v. Foreman</u>, ___ Cal. Rptr. 3d ___, 2014 WL 5174561, at *3 (5th Dist. 2014).

The appeals coordinator may refuse to accept an appeal, and she does so either by

---

[7] "In this context, the term 'appeal' includes the initial inmate grievance, which is submitted by the inmate using CDCR Form 602." <u>Menefield v. Foreman</u>, ___ Cal. Rptr. 3d ___, 2014 WL 5174561, at *3 (5th Dist. 2014).

1    "rejecting" or "canceling" it.  Cal. Code Regs. tit. 15, § 3084.6(a) ("Appeals may be rejected

2    pursuant to subsection 3084.6(b), or cancelled pursuant to subsection 3084.6(c), as determined by

3    the appeals coordinator").  According to the regulations, "a cancellation or rejection decision does

4    not exhaust administrative remedies."  Id., 3084.1(b).

5         An appeal may be "rejected" for several reasons, such as, "exceed[ing] the allowable

6    number of appeals filed in a 14 calendar day period," or failure to submit the appeal "on the

7    departmentally approved appeal forms."  Id. § 3084.6(b).  Whenever an appeal is "rejected," the

8    appeals coordinator is required to "provide clear and sufficient instructions regarding further

9    actions the inmate . . . must take to qualify the appeal for processing."  Id., § 3084.6(a)(1).

10        An appeal may be "cancelled" for several other reasons, such as, it "duplicates an

11   [inmate's] . . . previous appeal upon which a decision has been rendered or is pending."  Id.,

12   § 3084.6(c).   Whenever an appeal is "cancelled," the prisoner "shall be notified of the specific

13   reason(s) for the . . . cancellation."  Id., § 3084.5(b)(3).[8]

14        If the appeals coordinator allows an appeal to go forward, the inmate must pursue it

15   through the third level of review before it is deemed "exhausted."  Id. § 3084.1(b) ("all appeals

16   are subject to a third level of review, as described in section 3084.7, before administrative

17   remedies are deemed exhausted").

18        C.  Arguments of the Parties

19           1.  Defendant

20        Defendant has submitted evidence that, she argues, shows that plaintiff did not exhaust his

21   administrative remedies prior to filing this lawsuit, even though exhaustion through four levels of

22   administrative review is required by Cal. Code Regs., tit. 15, § 3084.5.[9]  According to defendant,

---

[8]  There is no requirement to tell the prisoner how to correct the "cancelled" appeal because, as
discussed below, cancellations refer to defects that cannot be corrected.  Therefore, the only way
for a prisoner to proceed with a cancelled appeal, is to show that the cancellation was made in
error (or that new information shows that the appeal may now be processed).  Cal. Code Regs.
tit. 15, § 3084.6(a)(3) ("a cancelled appeal may later be accepted if a determination is made that
cancellation was made in error or new information is received which makes the appeal eligible for
further review") (emphasis added).

[9]  In fact, effective January 28, 2011, the regulations defendant cites were repealed, and replaced
(continued…)

1  each of plaintiff's appeals was "rejected" or "cancelled."  Instead of complying with the

2  instructions he received on how to correct the problems so that he could administratively exhaust

3  his remedies, plaintiff simply filed more appeals, and then filed this lawsuit.  Defendant argues

4  that Ninth Circuit law does not permit plaintiff to file this lawsuit prior to fully exhausting his

5  administrative remedies.

6              2.  <u>Plaintiff</u>

7         Plaintiff has submitted a Memorandum in Opposition to defendant's summary judgment

8  motion.  ECF No. 53.  At the outset the court notes that plaintiff has failed to comply with Fed. R.

9  Civ. P. 56(c)(1) (A), which requires that "a party asserting that a fact . . . is genuinely disputed

10  must support the assertion by . . . citing to particular parts of materials in the record . . . ."

11  Plaintiff has also failed to file a separate document disputing defendant's statement of undisputed

12  facts, as required by E.D. Cal. R. ("Local Rule") 260(b).

13         It is well-established that the pleadings of pro se litigants are held to "less stringent

14  standards than formal pleadings drafted by lawyers."  <u>Haines v. Kerner</u>, 404 U.S. 519, 520 (1972)

15  (per curiam).  Nevertheless, "[p]ro se litigants must follow the same rules of procedure that

16  govern other litigants."  <u>King v. Atiyeh</u>, 814 F.2d 565, 567 (9th Cir. 1987), <u>overruled on another</u>

17  <u>ground by</u> <u>Lacey v. Maricopa County</u>, 693 F.3d 896 (9th Cir. 2012) (en banc).  However, the

18  unrepresented prisoners' choice to proceed without counsel "is less than voluntary" and they are

19  subject to the "handicaps . . . detention necessarily imposes upon a litigant," such as "limited

20  access to legal materials" as well as "sources of proof."  <u>Jacobsen v. Filler</u>, 790 F.2d 1362,

21  1364-65 & n.4 (9th Cir. 1986).  Inmate litigants, therefore, should not be held to a standard of

22  "strict literalness" with respect to the requirements of the summary judgment rule.  <u>Id.</u>

23         The court is mindful of the Ninth Circuit's more overarching caution in this context, as

24  noted above, that district courts are to "construe liberally motion papers and pleadings filed by

25  

26  with regulations that require only three levels of administrative review.  <u>See</u> Cal. Code Regs., tit.
15, § 3084.7(a), (b) & (c), and Historical Note No. 17.  Informal review still exists as an option,

27  but is no longer part of the exhaustion process.  <u>See</u> <u>id.</u>, § 3086 ("Request for Interview, Item or
Service").

28

1 pro se inmates and . . . avoid applying summary judgment rules strictly." Ponder, 611 F.3d

2 at 1150.  Accordingly, the court considers the record before it in its entirety despite plaintiff's

3 failure to be in strict compliance with the applicable rules.  However, only those assertions in the

4 opposition which have evidentiary support will be considered.

5 　　　　Plaintiff asserts that "[t]he defendants did not respond to the 1st level of appeals for

6 approx. 8 months, 7 months past the 30 day window and 4 months past the window, had the[y]

7 complied with policy and answered within 30 days per level which they did not."  ECF No. 53 at

8 1-2.  However, plaintiff does not identify which of his several appeals were not timely responded

9 to, and the court is able to identify from the record only one appeal that appears to have not been

10 timely responded to.  Plaintiff does not otherwise contest any of the specific factual assertions

11 made by defendant.

12 　　　　D.  Analysis of Exhaustion Issue

13 　　　　Defendant identifies several attempts plaintiff made to exhaust his administrative

14 remedies, and asserts that plaintiff failed to exhaust each one.

15 　　　　　　1.  Exhaustion of Appeal 1775 Is Excused

16 　　　　　　　　a.  Undisputed Facts

17 　　　　On June 11, 2013, plaintiff wrote a letter to "Dr. Kim" complaining about his treatment by

18 Dr. Palagummi, asking to have his ADA status restored, to be put back on his seizure and pain

19 medication, to have his operation, to be assigned another primary care doctor, and to be assigned

20 to the medical facility at Vacaville because he is transgender.  Exh. F.  The appeals office labeled

21 this letter DVI-HC-13041775 ("Appeal 1775"), and treated it as an appeal.[10]  Defendant S.

22

23 　[10]  The California regulations provide that "[i]nmates . . . may request . . . items and services via a
written request process."  Cal. Code Regs. tit. 15, § 3086.  This is an informal process, separate

24 from the formal Form 602 process, and it does not exhaust administrative remedies.  Id.,
§ 3086(i).  For reasons defendant does not explain (but possibly because the appeals office

25 processed the letter under the former regulations), defendants treated this apparent attempt to
engage the separate informal process like a formal appeal, and then "cancelled" it because it was

26 not on the formal appeals form, Form 602.  However, since the prison treated it as an appeal, and
neither side suggests that it should have been treated differently, the court will accept defendant's

27 representation that it was an appeal, subject to exhaustion.

28

1    Palagummi, M.D.'s Separate Statement of Undisputed Material Facts in Support of Motion for

2    Summary Judgment ("Facts") ¶¶ 4-5.

3        Appeal 1775 contains sufficient notice of four of the five factual predicates of plaintiff's

4    Section 1983 claim: that his ADA status was rescinded; that he has not received needed surgery;

5    that he has not been assigned to a medical facility where his medical needs can be treated; and

6    that he has been denied needed pain management, including medication.  Accordingly, if plaintiff

7    properly exhausted this appeal, or is excused from doing so, he may proceed with the claim in this

8    court.

9        On June 27, 2013, the appeals office notified plaintiff that his appeal was "cancelled" at

10   the first level of review, because it was not on the approved form.  Luyster Decl. ¶ 6.  The health

11   care appeals coordinator asserts, under oath, that a cancellation letter was sent to plaintiff, even

12   though it cannot be located and is not a part of the record here.  Luyster Decl. ¶ 6.  Plaintiff does

13   not dispute the assertion that a cancellation letter was sent to him.

14                    b.  Exhaustion

15       The CDCR regulations provide two, separate ways the appeals coordinator can refuse to

16   accept an appeal: she can "reject" the appeal, or she can "cancel" it.  Cal. Code Regs. tit. 15,

17   § 3084.6(a) ("Appeals may be rejected pursuant to subsection 3084.6(b), or cancelled pursuant to

18   subsection 3084.6(c), as determined by the appeals coordinator").

19       The appeal can be "rejected" if, as here, it is submitted on the wrong form.  Id.,

20   §§ 3084.2(a) ("The appellant shall use a CDCR Form 602 . . . to describe the specific issue under

21   appeal and the relief requested"), and 3084.6(b)(14) (an appeal may be rejected if "[t]he inmate

22   . . . has not submitted his/her appeal on the departmentally approved appeal forms").  Upon

23   "rejection" of his appeal, the inmate can re-submit the appeal "if the reason noted for the rejection

24   is corrected and the appeal is returned by the inmate . . . within 30 calendar days of rejection."

25   Id., § 3084.6(a)(2) (emphasis added).  Re-submission is possible, because the grounds for

26   "rejection" of an appeal are things that can be corrected by the inmate.  For example, the inmate

27   can submit the exact same appeal on the correct form, he can remove obscene language from the

28   ////

                                                11

1    appeal, he can add supporting documentation to the appeal, and so on.[11]

2           "Cancellation," on the other hand, is reserved for those appeals which the inmate cannot

3    simply correct.  For example, an appeal can be cancelled if the action complained of "is not

4    within the jurisdiction" of the CDCR, or the appeal is a duplicate of an appeal that is already

5    pending.  See id., § 3084.6(b)(1) & (2).  Upon "cancellation" of the appeal, the inmate's only

6    recourse, if he still wishes to pursue it, is to show that the reason given for the cancellation was

7    inaccurate or erroneous, or that "new information" now makes it eligible for review.  See id.,

8    3084.6(a)(3) (cancelled appeal may later be accepted "if a determination is made that cancellation

9    was made in error or new information is received which makes the appeal eligible for further

10   review").

11          As noted, the appeals coordinator notified plaintiff that Appeal 1775 was "cancelled"

12   because it was submitted on the wrong form.  See Luyster Decl. ¶ 6.  Although the cancellation

13   letter for Appeal 1775 is not in the record, the cancellation letters for several other appeals are,

14   and contain identical boilerplate language regarding how plaintiff can proceed to exhaust his

15   appeal.  The appeals coordinator gives no indication that this boilerplate language differed from

16   letter to letter, and therefore the court infers that the letter she sent for Appeal 1775 contained the

17   same boilerplate.  The cancellation letter states:

18                 This screening action may not be appealed unless you allege that
                   the above reasons(s) is inaccurate.
19

20   See Exh. I (ECF No. 47-7) at 2 (emphasis added); see also, Exh. K (ECF No. 47-9) at 2,  Exh. M

21   (Exh. 47-10) at 2, and Exh. P (ECF No. 47-12) at 2.  This instruction was wrong, and it

22   effectively blocked plaintiff from exhausting this appeal.

23          First, it was wrong because submission of an appeal on the wrong form is the type of

24   mistake that an inmate can correct simply by re-submitting the appeal on the correct form.  That

25   is why it is listed under the grounds for "rejecting" an appeal.  Cal. Code Regs. tit. 15,

26   _____

27   [11]  The appeal can be "rejected" if, among other reasons, it is on the wrong form, contains
     obscene language, or fails to attach required documentation. Cal. Code Regs. tit. 15, § 3084.6(4),
     (7) & (14).

28

1    § 3084.6(b)(14).  There is no provision in the regulation for "cancelling" an appeal on the

2    grounds that it is on the wrong form.

3        Second, the cancellation effectively blocked exhaustion, because the only way for plaintiff

4    to proceed, according to the letter, was to show that the reason for the screening action was

5    "inaccurate."  § 3084.6(a)(3).  If the appeals coordinator had instead followed the CDCR

6    regulations, and given plaintiff the instruction appropriate for a "wrong form" screening, plaintiff

7    would have been told that he could "correct" his error by simply re-submitting the exact same

8    appeal, but this time on Form 602.  See id., §§ 3084.6(a)(1) (if the appeal is rejected, "the appeals

9    coordinator shall provide clear and sufficient instructions regarding further actions the inmate or

10   parolee must take to qualify the appeal for processing") and (a)(2) ("rejected" appeal may be re-

11   submitted "if the reason noted for the rejection is corrected and the appeal is returned by the

12   inmate . . . within 30 calendar days of rejection").

13       Instead, plaintiff was told, incorrectly, that he could not appeal unless he showed that the

14   reason for the screening – "wrong form" – was "inaccurate."  But the reason for the screening

15   was accurate, in that plaintiff's appeal was not on the required 602 form.  In short, while it was

16   appropriate to screen out plaintiff's appeal, the appeals coordinator erred by giving plaintiff an

17   impossible task – show that the appeal was on the correct form – as the only means of continuing

18   with his appeal, rather than instructing him to simply re-submit his appeal on the correct form.

19   Further, it is clear that plaintiff could have exhausted this appeal had he been properly instructed.

20   All that was required was for him to re-submit the claim on the proper form, at which point it

21   could have gone through all three levels of review.  Moreover, the letter itself put the prison

22   authorities on notice of what plaintiff is complaining about in this lawsuit.  See Griffin v. Arpaio,

23   557 F.3d 1117, 1120 (9th Cir. 2009) ("'a grievance suffices if it alerts the prison to the nature of

24   the wrong for which redress is sought'") (quoting Strong v. David, 297 F.3d 646, 650 (7th

25   Cir. 2002)).

26       Because the misleading instruction plaintiff received effectively precluded him from

27   exhausting his remedies, exhaustion of this appeal is excused.  See Nunez v. Duncan, 591 F.3d

28   1217, 1226 (9th Cir. 2010) ("the Warden's mistake" which plaintiff reasonably believed to be an

13

1  instruction – although erroneous – on how to exhaust his appeal, "rendered Nunez's

2  administrative remedies effectively unavailable").

3       2.  Appeals 1717, 1718, 1772, 1781, 1782, 1932 and 2023

4       Plaintiff submitted seven (7) appeals from approximately June 20, 2013 to July 26, 2013.

5  They are Appeals 1717 (ECF No. 47-6 at 22-23), 1718 (ECF No. 47-6 at 11-19), 1772 (ECF

6  No. 47-8 at 2-7), 1781 (ECF No. 47-7 at 3-7), 1782 (ECF No. 47-9 at 3-6), 1932 (ECF No. 47-9

7  at 9-10) and 2023 (ECF No. 47-10 at 4-9).  None of these provided notice of any conduct at issue

8  in this lawsuit that had not previously been addressed in Appeal 1775.  Accordingly, it is

9  unnecessary to address whether or not these appeals were properly exhausted.

10      3.  Appeal 2095 was not exhausted nor was exhaustion excused

11          a.  Undisputed facts

12      On August 7, 2013, plaintiff submitted a Patient/Inmate Health Care Appeal on Form 602.

13  Luyster Decl., Exhibit P ("Exh. P") (ECF No. 47-12 at 2-6).  This appeal was labelled DVI-HC-

14  13042095 ("Appeal 2095").  Plaintiff requested that this appeal be handled as an "emergency

15  appeal."  Exh. P. at 3.

16      This appeal complained that Dr. Palagummi rescinded plaintiff's ADA status "out of

17  spite."  Plaintiff requested the restoration of his ADA status, and sought soft shoes, more suitable

18  pain medication, and surgery.  This appeal is the only one which contains the additional factual

19  predicate relating to plaintiff's request for "soft shoes."[12]  The appeal was received on August 8,

20  2013.  Id., at 3.

21      Over four months later, on December 19, 2013, the appeal was "cancelled" at the First

22  Level of review, on the grounds that it was duplicative.  Exh. P at 2.

23          b.  Exhaustion

24      The Court need not examine whether the appeal was actually duplicative (nor address the

25  ─────────────────────

26  [12]  Plaintiff quite possibly complains of other things, and makes additional requests, but the court
   is unable to read the rest of the form.  The copy submitted by defendant has insufficient contrast

27  between the writing and the underlying paper to be deciphered.  See Exh. P at 2 & 4.  It does not
   matter, however, because this appeal was not exhausted.

28

1    failure to respond to the appeal within 30 days), because it is clear that plaintiff failed to exhaust

2    this claim.  Plaintiff filed this lawsuit just 22 days after he submitted Appeal 2095, while the

3    appeal was still pending in the appeals office at the First Level of review.[13]  It is therefore plain

4    from the face of the complaint and the materials submitted in support of summary judgment, that

5    plaintiff did not exhaust this appeal prior to filing suit.  See McKinney v. Carey, 311 F.3d 1198

6    (9th Cir. 2002) (per curiam) (the exhaustion requirement is "mandatory," and "clearly

7    contemplates exhaustion prior to the commencement of the action as an indispensable

8    requirement").  Accordingly, the court finds that no exhausted or excused appeal put defendant

9    sufficiently on notice of the portion of his Section 1983 claim that relates to his request for "soft

10   shoes."

11                                   III.  CONCLUSION

12          Plaintiff is excused from exhausting Appeal 1775.  This appeal put defendant on sufficient

13   notice that plaintiff claims an Eighth Amendment violation based upon defendant's alleged

14   conduct in rescinding his ADA status, refusing to order surgery for plaintiff, refusing to

15   recommend plaintiff for a medical facility and refusing to provide plaintiff with proper pain

16   management.

17          Accordingly, IT IS HEREBY ORDERED that:

18          1.      Defendant's motion for summary judgment regarding exhaustion of administrative

19   remedies (ECF No. 47), is GRANTED to the extent it asserts that Appeal 2095 is not exhausted,

20   and otherwise DENIED;

21          2.      Plaintiff's cross-motion for summary judgment regarding exhaustion of

22   administrative remedies (ECF No. 53), is GRANTED to the extent it asserts that exhaustion of

23   Appeal 1775 is excused, and otherwise DENIED;

24          3.      Accordingly, this lawsuit may proceed on plaintiff's claim that the defendant

25   violated plaintiff's Eighth Amendment rights by (a) rescinding plaintiff's ADA status,

26   _____

27   [13]  For reasons defendant does not explain, this appeal was not responded to for four months.
     However, plaintiff filed this lawsuit within the 30 day period the prison was permitted to respond
     to the appeal.

28

(b) refusing to order needed surgery, (c) refusing to recommend plaintiff for a medical facility capable of handling his medical needs, and (d) refusing him needed pain management; and

    4.       Plaintiff's motion for a Mail Delivery Order (ECF No. 46) is DENIED.

DATED: November 4, 2014

*allison Clare*

ALLISON CLAIRE
UNITED STATES MAGISTRATE JUDGE