UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JEREMY L. JAMISON,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>SAMBRAJYA PALAGUMMI,<br><br>　　　　Defendant. | No. 2:13-cv-1705 AC P<br><br><br>ORDER |

Plaintiff is a state prisoner proceeding pro se and in forma pauperis in this action filed pursuant to 42 U.S.C. § 1983. Currently before the court is defendant's motion for summary judgment. ECF No. 83. The parties have consented to the jurisdiction of the Magistrate Judge.[1] ECF. Nos. 6, 21.

I.     Procedural History

On July 31, 2013, plaintiff filed a complaint against defendants Palagummi, Luyster, Kim, and the State of California in which he claimed that his Eighth Amendment rights had been violated and appeared to allege that his Fourteenth Amendment rights and rights under the Americans with Disabilities Act (ADA) had also been violated. ECF No. 1. On screening,

---

[1] Plaintiff previously tried to withdraw his consent (ECF No. 45), but his request was denied because he failed to show good cause for the withdrawal (ECF No. 54).

1

1  defendants Luyster, Kim, and the State of California were dismissed, as were any potential claims
2  under the Fourteenth Amendment and ADA.  ECF No. 8.  Plaintiff was given the option of
3  proceeding on the surviving Eighth Amendment claims against defendant Palagummi or
4  amending the complaint.  Id.  Plaintiff chose to proceed against defendant Palagummi without
5  amending the complaint.  ECF No. 16.

6  Defendant Palagummi answered the complaint (ECF No. 20) and subsequently moved to
7  dismiss the complaint for failure to exhaust administrative remedies prior to bringing suit.  ECF
8  No. 35.  The motion to dismiss was vacated after the Ninth Circuit issued its opinion in Albino v.
9  Baca, 747 F.3d 1162 (9th Cir. 2014), and defendant was given an opportunity to re-file the
10 motion as a motion for summary judgment.  ECF No 42.  Defendant proceeded to file a motion
11 for summary judgment alleging that plaintiff had failed to exhaust his administrative remedies
12 prior to filing his lawsuit (ECF No. 47) and plaintiff filed an opposition and cross-motion (ECF
13 No. 53).  The court found that plaintiff had not exhausted his administrative remedies with respect
14 to his request for soft shoes and that he was excused from exhausting his appeal that alleged
15 defendant (1) revoked his ADA status, (2) refused to order necessary surgery, (3) refused to
16 recommend he be sent to a medical facility that could handle his needs, and (4) refused to provide
17 pain medication.  ECF No. 59.

18 Defendants have now filed a motion for summary judgment on plaintiff's remaining
19 claims against defendant Palagumi.  ECF No. 83.

20 II.    Plaintiff's Allegations

21 Plaintiff alleges that he has mobility issues that qualify him as disabled under the ADA.
22 ECF No. 1 at 4.  He claims that he was seen by defendant Palagummi on June 6, 2013, and that
23 she revoked his ADA status and took away his wheelchair.  Id. at 4-5.  He further alleges that she
24 refused to re-order an operation that he had previously been approved for, supply him with pain
25 medication, and recommend that he be sent to a medical facility that could provide physical
26 therapy.  Id.
27 ////
28 ////

1  III.     Defendant's Summary Judgment Motion

2      Defendant moves for summary judgment on the grounds that she was not deliberately
3  indifferent to plaintiff's serious medical needs and that she provided appropriate treatment.  ECF
4  No. 83-1 at 15-19.  She also argues that she is entitled to qualified immunity and that plaintiff's
5  claim that she refused to refer him to an appropriate medical facility is barred because plaintiff
6  failed to exhaust his administrative remedies with respect to that claim.  Id. at 19-22.

7  IV.     Plaintiff's Opposition

8      At the outset, the court notes that plaintiff has failed to comply with Federal Rule of Civil
9  Procedure 56(c)(1)(A), which requires that "a party asserting that a fact . . . is genuinely disputed
10 must support the assertion by citing to particular parts of materials in the record."  Plaintiff has
11 also failed to file a separate document disputing defendants' statement of undisputed facts, as
12 required by Local Rule 260(b).

13     It is well-established that the pleadings of pro se litigants are held to "less stringent
14 standards than formal pleadings drafted by lawyers."  Haines v. Kerner, 404 U.S. 519, 520 (1972)
15 (per curiam).  Nevertheless, "[p]ro se litigants must follow the same rules of procedure that
16 govern other litigants."  King v. Atiyeh, 814 F.2d 565, 567 (9th Cir. 1987) (citation omitted),
17 overruled on other grounds, Lacey v. Maricopa Cnty., 693 F.3d 896 (9th Cir. 2012) (en banc).
18 However, the unrepresented prisoners' choice to proceed without counsel "is less than voluntary"
19 and they are subject to the "handicaps . . . detention necessarily imposes upon a litigant," such as
20 "limited access to legal materials . . . and to sources of proof."  Jacobsen v. Filler, 790 F.2d 1362,
21 1364 n.4 (9th Cir. 1986) (internal citations omitted).  Inmate litigants, therefore, should not be
22 held to a standard of "strict literalness" with respect to the requirements of the summary judgment
23 rule.  Id.

24     The court is mindful of the Ninth Circuit's more overarching caution in this context, as
25 noted above, that district courts are to "construe liberally motion papers and pleadings filed by
26 *pro se* inmates and should avoid applying summary judgment rules strictly."  Thomas v. Ponder,
27 611 F.3d 1144, 1150 (9th Cir. 2010).  Accordingly, the court considers the record before it in its
28 entirety despite plaintiff's failure to be in strict compliance with the applicable rules.  However,

only those assertions in the opposition which have evidentiary support will be considered.

Plaintiff's opposition argues that defendant contradicts herself, that his evaluations by other doctors contradict Palagummi's findings, that defendant is not qualified to be a doctor because her medical degree is from India, and that the exhaustion issue has already been decided. ECF No. 84 at 1-7; ECF No. 87 at 1-4; ECF No. 89 at 1-3.

V.  Undisputed Material Facts

With the exception of paragraph 55 of defendant's statement of undisputed facts (DSUF), plaintiff has not specifically addressed any of defendant's undisputed facts. ECF Nos. 84, 87. Instead, plaintiff argues that defendant Palagummi has contradicted her own previous diagnosis and that his medical records support that he has a mobility impairment and was inappropriately denied treatment by Palagummi. Because plaintiff does not address each individual statement of fact, and his arguments are largely unsupported, the following material facts have been determined to be undisputed except as noted.

At all times relevant to this complaint, plaintiff was an inmate incarcerated at the Deuel Vocational Institution (DVI) where defendant Palagummi was employed as a doctor. DSUF (ECF No. 83-3) ¶¶ 2, 13. Plaintiff began his relevant period of incarceration on May 7, 2013. DSUF ¶ 13. His previous incarceration, during which time he was seen by Palagummi on two occasions where they discussed his knee pain, ended on April 23, 2011. DSUF ¶¶ 2-9, 12.

Shortly after plaintiff's arrival at DVI during his second incarceration, Dr. Sam Wong was assigned as his primary care physician and performed an intake evaluation on May 16, 2013. DSUF ¶ 14; ECF No. 83-5 at 7-10. During the evaluation, plaintiff complained of chronic right knee pain and Dr. Wong observed that he could "ambulate well with a cane" and that there was mild tenderness when he palpated plaintiff's right knee. DSUF ¶ 15; ECF No. 83-5 at 7-8. Dr. Wong did not have access to plaintiff's records from his previous incarceration and could not verify plaintiff's previous diagnoses or treatment. DSUF ¶ 16. After evaluating plaintiff's knee, Dr. Wong ordered an x-ray of the knee; issued a thirty day prescription for ibuprofen and ninety day prescription for Elavil for the pain; prescribed a knee brace; and completed a temporary

////

1   accommodation chrono for a lower bunk and ground floor bunk.  DSUF ¶ 18; ECF No. 83-5 at 8-
2   10.
3         On May 25, 2013, plaintiff submitted a Form CDC 1824, Reasonable Modification or
4   Accommodation Request.  ECF No. 83-7.  In the request, plaintiff stated that he was ADA and
5   DPM, which meant he was designated with "Mobility Impairment – With or Without Assistive
6   Device (Wheelchairs shall not be prescribed)."  ECF No. 83-7 at 8; DSUF ¶ 30.  He also stated
7   that he needed knee replacement surgery, which had been ordered by a doctor in 2011 during his
8   previous incarceration; that his prescription for Elavil was a health risk because of his diabetes,
9   estrogen therapy, and seizure disorder; and that he wanted a chrono for soft shoes.  ECF No. 83-7
10  at 8.  He requested morphine and Demerol be prescribed for his pain until surgery and
11  rehabilitation were complete.  Id.
12        Plaintiff was interviewed by Officer Miller on May 29, 2013, in response to his request for
13  accommodation.  ECF No. 83-7 at 17.  Officer Miller recorded that plaintiff "walked effortlessly
14  holding his cane without touching it to the ground, he had no problems negotiati[ng] the route."
15  Id.  Miller further recorded that plaintiff "stated he only needed [the cane] for long distances" and
16  that plaintiff's primary concerns were being allowed to have a chrono for soft shoes, getting
17  surgery for his knee, and medication for his pain.  Id.  Plaintiff was temporarily assigned a
18  wheelchair until his accommodation assessment was complete, though Miller opined that, based
19  on his observation, "the need for an assistive device such as a cane does not exist as JAMISON
20  was moving and walks freely carrying the cane without using it."  Id.
21        Plaintiff was seen by Dr. Wong on June 3, 2013, in response to his request for soft shoes,
22  at which time Dr. Wong prescribed shoe inserts.  DSUF ¶¶ 25-26; ECF No. 83-5 at 11-12.
23        On June 6, 2013, plaintiff was seen by defendant Palagummi regarding his request for a
24  disability accommodation.  DSUF ¶ 27; ECF No. 93-4 at 20.  At the time of the evaluation,
25  defendant Palagummi did not have access to plaintiff's records from his previous incarceration,
26  but she did review Dr. Wong's notes from May 16, 2013, and June 3, 2013.  DSUF ¶¶ 29, 34-35.
27  During the evaluation, plaintiff reported that he had had an x-ray of his right knee done in 2010
28  that was normal and that a doctor at Corcoran had told him that he needed a right knee

replacement. DSUF ¶ 33, ECF No. 83-4 at 20. Although plaintiff refused to let defendant touch his knee to conduct an evaluation and refused to bend his knee or walk, she was able to observe that it was not swollen and there were no deformities. DSUF ¶¶ 38-41; ECF No. 83-4 at 20, 24-25. Defendant attempted to follow-up on the x-ray ordered by Dr. Wong and was told that plaintiff had refused the x-ray.[2] ECF No. 83-4 at 20. Defendant Palagummi ordered an x-ray be taken that day and that plaintiff follow-up with his primary care physician in two to four weeks. DSUF ¶¶ 44ECF No. 83-4 at 21. The issue of pain medication was not raised during the evaluation. DSUF ¶ 48. As a result of the evaluation, Palagummi referred plaintiff to a physical therapist on an urgent basis, requesting that his claims be evaluated and noting that he had refused an x-ray and would not bend his knee or walk. ECF No. 83-4 at 24. Because she could not verify plaintiff's mobility impairment, Palagummi did not grant plaintiff an ADA designation, but did provide temporary mobility accommodations pending further evaluation and verification. DSUF ¶ 46; ECF No. 83-4 at 20. The only time Palagummi saw plaintiff during his second incarceration was on June 6, 2013.[3] DSUF ¶ 50. During that time she was not assigned as his primary care physician, but to evaluate his request for accommodation. DSUF ¶ 27.

Plaintiff was seen by the physical therapist on June 12, 2013. DSUF ¶ 51; ECF No. 83-4 at 27. The physical therapist noted that plaintiff was "unable to exercise due to pain. This IMP is not a candidate for physical therapy in this institution @ this time." ECF No. 84-3 at 27. There is no recommendation to transfer him to another facility. Id.

---

[2] Plaintiff appears to deny that he refused an x-ray, but at the same time states that Palagummi "did all she did to [plaintiff] because she did not like [him] not taking an x-ray." ECF No. 84 at 2. There is no evidence of an x-ray being taken and Dr. Wong's notes from plaintiff's July 25, 2013 exam state that "pt admit refusal of R knee x-ray" and reflect that Dr. Wong ordered another x-ray after "pt now agreed to get the x-ray." ECF No. 83-5. Plaintiff cites to the "attached proof written by doctor Newman" in support of his claim that Palagummi is lying (ECF No. 84 at 2), but the record he appears to be citing states only that "Xray of R knee (2013) = negative" id. at 15) and another record completed by Dr. Newman indicates that plaintiff did not have an x-ray taken until August 20, 2013 (ECF No. 83-4 at 31).
[3] Although plaintiff alleges that Palagummi lied about only seeing him once, the records he cites to are all from 2010 (ECF No. 84 at 10, 30-31; ECF No. 87 at 14-18, 25, 28) and Palagummi specifically acknowledges the times she saw him in 2010 (DSUF ¶¶ 2-9).

On July 11, 2013, plaintiff was seen by Dr. Wong regarding his request that he be put on gabapentin for his seizure disorder. DSUF ¶ 56; ECF No. 83-5 at 13. During the exam, Dr. Wong noted that plaintiff was able to stand and walk without any apparent difficulty and moved without pain. DSUF ¶¶ 57-58; ECF No. 83-5 at 13.

Plaintiff was seen by Dr. Wong again on July 25, 2013, at which time he evaluated plaintiff's claim of chronic knee pain and prescribed two weeks of Tylenol 3 with codeine. DSUF ¶¶ 59-62; ECF No. 83-5 at 14. Doctor Wong noted that plaintiff's knee was not swollen and that he had full range of motion and did not limp while walking. Id. The notes reflect that plaintiff admitted to refusing x-rays up to that point and that another x-ray was ordered because plaintiff agreed to allow the x-ray to be taken. ECF No. 83-5 at 14.

Plaintiff was assigned a new primary care physician, Dr. Newman, who saw him on September 9, 2013. DSUF ¶¶ 63-64. The notes from that examination reflect that Elavil was discontinued at plaintiff's request. ECF No. 83-4 at 28. On September 10, 2013, Dr. Newman ordered plaintiff a knee sleeve and cane. DSUF ¶ 69; ECF No. 83-4 at 29-30.

On October 7, 2013, plaintiff was seen by Dr. Newman again, and although plaintiff's knee did not appear swollen Dr. Newman wanted to rule out a meniscal tear; discontinued the Tylenol 3 and replaced it with Ultram; and renewed the order for plaintiff's knee brace, cane, and knee sleeve. DSUF ¶¶ 66-67; ECF No. 83-4 at 31. He saw plaintiff again on December 19, 2013, at which time he reviewed plaintiff's x-ray, which had negative findings, and ordered an MRI. DSUF ¶¶ 68-69; ECF No. 83-4 at 33. Doctor Newman also designated plaintiff as mobility impaired but not requiring a wheelchair. DSFU ¶ 70; ECF No. 83-4 at 34.

Plaintiff was transferred out of DVI on January 10, 2014. DSUF ¶ 71.

VI.     Legal Standards for Summary Judgment

Summary judgment is appropriate when the moving party "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Under summary judgment practice, "[t]he moving party initially bears the burden of proving the absence of a genuine issue of material fact." In re Oracle Corp. Sec. Litig., 627 F.3d 376, 387 (9th Cir. 2010) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986)). The

1   moving party may accomplish this by "citing to particular parts of materials in the record,
2   including depositions, documents, electronically stored information, affidavits or declarations,
3   stipulations (including those made for purposes of the motion only), admission, interrogatory
4   answers, or other materials" or by showing that such materials "do not establish the absence or
5   presence of a genuine dispute, or that the adverse party cannot produce admissible evidence to
6   support the fact." Fed. R. Civ. P. 56(c)(1).

7   "Where the non-moving party bears the burden of proof at trial, the moving party need
8   only prove that there is an absence of evidence to support the non-moving party's case." Oracle
9   Corp., 627 F.3d at 387 (citing Celotex, 477 U.S. at 325); see also Fed. R. Civ. P. 56(c)(1)(B).
10  Indeed, summary judgment should be entered, "after adequate time for discovery and upon
11  motion, against a party who fails to make a showing sufficient to establish the existence of an
12  element essential to that party's case, and on which that party will bear the burden of proof at
13  trial." Celotex, 477 U.S. at 322. "[A] complete failure of proof concerning an essential element
14  of the nonmoving party's case necessarily renders all other facts immaterial." Id. at 323. In such
15  a circumstance, summary judgment should "be granted so long as whatever is before the district
16  court demonstrates that the standard for the entry of summary judgment, as set forth in Rule
17  56(c), is satisfied." Id.

18  If the moving party meets its initial responsibility, the burden then shifts to the opposing
19  party to establish that a genuine issue as to any material fact actually does exist. Matsushita Elec.
20  Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986). In attempting to establish the
21  existence of this factual dispute, the opposing party may not rely upon the allegations or denials
22  of its pleadings but is required to tender evidence of specific facts in the form of affidavits, and/or
23  admissible discovery material, in support of its contention that the dispute exists. See Fed. R.
24  Civ. P. 56(c). The opposing party must demonstrate that the fact in contention is material, i.e., a
25  fact "that might affect the outcome of the suit under the governing law," Anderson v. Liberty
26  Lobby, Inc., 477 U.S. 242, 248 (1986); T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n,
27  809 F.2d 626, 630 (9th Cir. 1987), and that the dispute is genuine, i.e., "the evidence is such that a
28  reasonable jury could return a verdict for the nonmoving party," Anderson, 447 U.S. at 248.

In the endeavor to establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient that "'the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial.'" T.W. Elec. Serv., 809 F.2d at 630 (quoting First Nat'l Bank of Ariz. V. Cities Serv. Co., 391 U.S. 253, 288-89 (1968). Thus, the "purpose of summary judgment is to pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial." Matsushita, 475 U.S. at 587 (citation and internal quotation marks omitted).

"In evaluating the evidence to determine whether there is a genuine issue of fact, [the court] draw[s] all inferences supported by the evidence in favor of the non-moving party." Walls v. Central Contra Costa Cnty. Transit Auth., 653 F.3d 963, 966 (9th Cir. 2011) (citation omitted). It is the opposing party's obligation to produce a factual predicate from which the inference may be drawn. See Richards v. Nielsen Freight Lines, 810 F.2d 898, 902 (9th Cir. 1987). Finally, to demonstrate a genuine issue, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita, 475 U.S. at 586 (citations omitted). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" Id. at 587 (quoting First Nat'l Bank, 391 U.S. at 289).

On March 26, 2015, defendant served plaintiff with notice of the requirements for opposing a motion pursuant to Rule 56 of the Federal Rules of Civil Procedure. ECF No. 83-2. See Klingele v. Eikenberry, 849 F.2d 409, 411 (9th Cir. 1988); Rand v. Rowland, 154 F.3d 952, 960 (9th Cir. 1998) (movant may provide notice) (en banc).

VII.  Legal Standard Governing Eighth Amendment Claims

In order to state a §1983 claim for violation of the Eighth Amendment based on inadequate medical care, plaintiff "must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." Estelle v. Gamble, 429 U.S. 97, 106 (1976). To prevail, plaintiff must show both that his medical needs were objectively serious, and that defendants possessed a sufficiently culpable state of mind. Wilson v. Seiter, 501 U.S. 294, 298-99 (1991); McKinney v. Anderson, 959 F.2d 853, 854 (9th Cir. 1992) (on remand). The requisite

state of mind for a medical claim is "deliberate indifference."  Hudson v. McMillian, 503 U.S. 1, 5 (1992).

"A 'serious' medical need exists if the failure to treat a prisoner's condition could result in further significant injury or the 'unnecessary and wanton infliction of pain.'"  McGuckin v. Smith, 974 F.2d 1050, 1059 (9th Cir. 1992) (quoting Estelle, 429 U.S. at 104), overruled on other grounds WMX Technologies v. Miller, 104 F.3d 1133 (9th Cir. 1997) (en banc).  Examples of a serious medical need include "[t]he existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain."  Id. at 1059-60 (citing Wood v. Housewright, 900 F.2d 1332, 1337-41 (9th Cir. 1990) (citing cases); Hunt v. Dental Dept., 865 F.2d 198, 200-01 (9th Cir. 1989)).

In Farmer v. Brennan, 511 U.S. 825 (1994), the Supreme Court established a very demanding standard for "deliberate indifference."  "While poor medical treatment will at a certain point rise to the level of constitutional violation, mere malpractice, or even gross negligence, does not suffice."  Wood, 900 F.2d at 1334.  Even civil recklessness (failure to act in the face of an unjustifiably high risk of harm which is so obvious that it should be known) is insufficient to establish an Eighth Amendment violation.  Farmer, 511 U.S. at 837 & n.5.  It is not enough that a reasonable person would have known of the risk or that a defendant should have known of the risk.  Toguchi v. Chung, 391 F.3d 1051, 1057 (9th Cir. 2004).  Rather, deliberate indifference is established only where the defendant *subjectively* "knows of and disregards an excessive risk to inmate health and safety."  Id. (citation and internal quotation marks omitted).  Deliberate indifference can be established "by showing (a) a purposeful act or failure to respond to a prisoner's pain or possible medical need and (b) harm caused by the indifference.  Jett v. Penner, 439 F.3d 1091, 1096 (9th Cir. 2006) (citation omitted).

A difference of opinion between an inmate and prison medical personnel—or between medical professionals—regarding appropriate medical diagnosis and treatment are not enough to establish a deliberate indifference claim.  Sanchez v. Vild, 891 F.2d 240, 242 (9th Cir. 1989); Toguchi, 391 F.3d at 1058.  To establish a difference of opinion rises to the level of deliberate

1  indifference, plaintiff "must show that the course of treatment the doctors chose was medically

2  unacceptable under the circumstances." Jackson v. McIntosh, 90 F.3d 330, 332 (9th Cir. 1996).

3      VIII.    Discussion

4          A.        Palagummi's Credentials

5      Plaintiff argues that defendant Palagummi is not competent to be a doctor because she was

6  educated in India and her education could not be verified by the California Medical Board. ECF

7  No. 84 at 3-4; ECF No. 87 at 1-3. However, he provides only unverified documents to support

8  his claim, and even if they were verified, the documents show that defendant Palagummi is

9  properly licensed in California to practice medicine. ECF No. 84 at 53-58.

10          B.        ADA Designation and Wheelchair

11      The undisputed evidence shows that while defendant Palagummi did not designate

12  plaintiff as mobility impaired and removed him from his previous classification as DPM (ECF

13  No. 83-4 at 25), she still prescribed him mobility accommodations until his disability to could be

14  verified (id. at 22). Given plaintiff's refusal to cooperate in Palagummi's evaluation of his

15  condition, which he does not deny,[4] defendant's decision to remove plaintiff's previous

16  classification until it could be verified, while still providing accommodations, does not

17  demonstrate deliberate indifference to his serious medical needs.

18      With respect to the claim that Palagummi ordered his wheelchair taken away (ECF No. 84

19  at 4; ECF No. 87 at 4), plaintiff argues that he was told that defendant instructed prison staff to

20  remove his wheelchair, but he provides no competent evidence to support his claim. To the

21  extent Palagummi's order for temporary mobility accommodations, which did not include an

22  accommodation for a wheelchair, resulted in plaintiff's wheelchair being taken, there is no

23  evidence plaintiff required the use of a wheelchair. With the exception of plaintiff's physical

24  therapy evaluation, all other evaluations of plaintiff's mobility, including the evaluation by

25  custody staff that resulted in the temporary provision of the wheelchair, indicated that plaintiff did

---

[4] Plaintiff appears to argue only that defendant lied about whether he submitted to an x-ray. ECF No. 84 at 2.

1   not require a wheelchair. ECF No. 83-4 at 31, 34; ECF No. 83-5 at 7-8, 13-14; ECF No. 83-7 at
2   17.
3     In his opposition, plaintiff makes reference to a court order regarding his mobility
4   accommodations in Jamison v. Davis Enterprise Newspaper, Case No. 2:10-cv-00124-KJM-EFB.
5   ECF No. 84 at 1. However, the stipulation adopted by the court was that plaintiff's "Notice of
6   Return to Prison, CDCR1018" would be amended to reflect that plaintiff had mobility concerns.
7   Jamison v. Davis Enterprise Newspaper, Case No. 2:10-cv-00124-KJM-EFB, ECF Nos. 122, 153.
8   It provides no specifics regarding necessary mobility accommodations. Id. Plaintiff also
9   references an alleged confrontation between defendant and the attorneys monitoring CDCR's
10  compliance with the Armstrong Remedial Plan. ECF No. 84 at 2-3. However, hearsay evidence
11  is not sufficient to support an opposition to a motion for summary judgment, and the letter
12  plaintiff references does not support the conclusion that Palagummi was deliberately indifferent.
13  The letter states that she told the attorney that her decision not to verify his disability was based
14  largely on plaintiff's refusal to have an x-ray taken and that plaintiff's records indicate that he did
15  in fact refuse the x-ray. ECF No. 84 at 21.
16    There is no evidence that defendant Palagummi was deliberately indifferent to plaintiff's
17  serious medical needs with respect to his ADA designation or assignment of a wheelchair.
18    C. Knee Replacement Surgery
19    As with defendant's decision not to verify plaintiff as mobility impaired, the court is
20  unable to find a triable issue regarding deliberate indifference in defendant's failure to refer
21  plaintiff for knee replacement surgery or knee surgery in general. Plaintiff refused to submit to an
22  exam or have an x-ray of his knee taken. Additionally, defendant did not have access to
23  plaintiff's past medical records other than the notes from his recent exams by Dr. Wong. Even if
24  Palagummi had had access to plaintiff's records from his previous incarceration, it had been
25  approximately three years since she had last seen plaintiff and he had been out of CDCR custody
26  for approximately two years. DSUF ¶¶ 9, 12-13. Palagummi would not have been able to
27  determine plaintiff's current condition and needs based on two to three year old records. There is
28  no indication that it was medically unreasonable for her to require that plaintiff submit to an

1  evaluation of his condition before considering referring him for surgery.

2      D.      Pain Medication

3  Although plaintiff's request for accommodation indicated that he wanted different pain

4  medication, Palagummi states – and plaintiff does not deny – that the issue of pain medication did

5  not come up during the June 6, 2013 evaluation. DSUF ¶ 48; ECF Nos. 84, 87.  Even if the issue

6  of additional pain medication was raised on June 6, 2013, there is no evidence to support an

7  inference that Palagummi was aware that not prescribing pain medication would pose a serious

8  risk to plaintiff's health.  This is so because plaintiff had already been prescribed pain medication

9  by his primary care physician, he refused to participate in the evaluation, and defendant did not

10  observe any swelling or deformities of the knee.  Plaintiff's records show that he was prescribed

11  pain medication by Dr. Wong, his primary care physician, on May 16, 2013 (ECF No. 83-5 at

12  10), and again on July 25, 2013 (id. at 14), and appears to have continued to receive prescriptions

13  for pain medication through his primary care physician (ECF No. 83-4 at 31-33).  To the extent

14  plaintiff alleged in his disability accommodation that Elavil could cause a health risk and cause

15  thoughts of suicide (ECF No. 83-7 at 8), there is no evidence or allegation that plaintiff expressed

16  to defendant that he was actually having thoughts of suicide or that a doctor determined that

17  Elavil posed a health risk.  When Elavil was discontinued, the record indicates only that it was

18  done at plaintiff's request, not that discontinuance was medically necessary. ECF NO. 83-4 at 28.

19  On this record, plaintiff's medication preference amounts to no more than a disagreement as to

20  his treatment.

21      E.      Transfer to Another Facility

22  The court declines to consider defendant's argument that plaintiff did not exhaust his

23  administrative remedies as to his claim that defendant Palagummi failed to transfer him to another

24  facility that could meet his medical needs. ECF No. 83-1 at 20-22.  Defendant does correctly

25  point out that the complaint specifies the medical need at issue was physical therapy (ECF No. 1

26  at 5), while the appeal the court determined was excused from exhaustion, DVI-HC-13041775,

27  dealt with a transfer based on plaintiff's identification as transgender (ECF No. 47-6 at 5).  Upon

28  review, it appears that appeal DVI-HC-13041775 did not exhaust plaintiff's claim regarding

being transferred for physical therapy. Defendant argues that plaintiff's claim should therefore be dismissed as unexhausted because DVI-HC-13041775 was the only appeal for which the court excused exhaustion. ECF No. 83-1 at 22. However, after the court determined that appeal DVI-HC-13041775 satisfied plaintiff's exhaustion requirement, it did not analyze the remainder of plaintiff's attempted appeals because it found that they did not raise any issues not already covered by appeal DVI-HC-1304177. ECF No. 59 at 14. Since the court did not make a determination as to whether appeals DVI-HC-13041717, DVI-HC-13041718, DVI-HC-13041772, DVI-HC-13041781, DVI-HC-13041782, DVI-HC-13041932, and DVI-HC-13042023 had been exhausted or not, defendant cannot rely upon the November 5, 2014 order to prove failure to exhaust. Because defendant has not properly briefed the issue in her motion for summary judgment, the court will not consider it now, but notes that a brief review of the evidence submitted in support the exhaustion motion indicates that plaintiff would likely be excused from the exhaustion requirement as to this claim.[5]

The undisputed evidence currently before the court, however, shows that defendant Palagummi did not violate plaintiff's Eighth Amendment rights when she did not recommend that he be transferred to another facility for physical therapy. It is undisputed that defendant was not plaintiff's primary care provider and only saw plaintiff once during the relevant time period, which was prior to his appointment with the physical therapist. Defendant's notes clearly refer plaintiff back to his primary care provider for follow-up (ECF No. 83-4 at 21), and there is no evidence that Palagummi was responsible for plaintiff's care after the evaluation of his mobility disability. Even if defendant had been responsible for reviewing the physical therapists notes and following up, there is nothing in the notes that indicates a medical need for a transfer recommendation.[6] Id. at 24, 27. In other words, there is no evidence that defendant had the

---

[5] Appeal DVI-HC-13041781 states that defendant refused to transfer him despite the physical therapists recommendation (ECF No. 47-7 at 5) and a declaration submitted by defendant states that DVI-HC-13041781 was incorrectly cancelled as duplicative of appeals DVI-HC-13041486 and DVI-HC-13041565 (ECF No. 47-4 at 4-5, ¶ 9).

[6] The court will not consider the supplemental statement of undisputed facts and declaration of Thomas Martin which were submitted by defendant in support of her reply to the motion for (continued)

14

1  requisite knowledge of and disregard for a substantial risk of harm to plaintiff if she failed to

2  recommend plaintiff's transfer.  Plaintiff's reference to the alleged confrontation with the

3  attorneys monitoring compliance with Armstrong is insufficient to support plaintiff's argument,

4  both because it is inadmissible hearsay and because the letter does not specify what was discussed

5  or make any reference to a recommendation that plaintiff be transferred for physical therapy.

6      The court finds the evidence insufficient to support a finding that defendant Palagummi

7  was deliberately indifferent by not recommending plaintiff for transfer to another facility.

8     IX.    Conclusion

9      For the reasons set forth above, the court finds that the evidence is susceptible of only one

10  conclusion: that defendant Palagummi was not deliberately indifferent to plaintiff's serious

11  medical needs.  Her motion for summary judgment therefore will be granted.  Because the court

12  has found that there was no violation of plaintiff's constitutional rights, it declines to address

13  defendant's qualified immunity argument.

14     X.    Summary

15      Defendant's motion for summary judgment is granted because plaintiff has not provided

16  evidence that defendant Palagummi knew that there was a serious risk to his health and ignored

17  the risk.  The evidence shows that plaintiff refused to cooperate with Palagummi's attempt to

18  evaluate his right knee and that he did not require a wheelchair.  There is also no evidence that

19  defendant was responsible for plaintiff's treatment after the June 6, 2013 evaluation.

20  ////

21  ////

---

22  summary judgment. ECF Nos. 85-1; 85-2.  The complaint included a claim that the physical
23  therapist recommended he be sent to another facility. ECF No. 1 at 5.  The evidence is therefore
not in response to an argument made for the first time in plaintiff's response.  Moreover,
24  "'[w]here new evidence is presented in a reply to a motion for summary judgment, the district
court should not consider the new evidence without giving the [non-]movant an opportunity to
25  respond.'" Provenz v. Miller, 102 F.3d 1478, 1483 (9th Cir. 1996) (alteration in original)
(quoting Black v. TIC Inv. Corp., 900 F.2d 112, 116 (7th Cir. 1990)).  Plaintiff was not given an
26  opportunity to respond and it is not clear that the notation included in his supplemental response
27  (ECF No. 89 at 9), filed only three days after defendant served her reply, was directed at the new
evidence proffered by defendant.
28

Accordingly, IT IS HEREBY ORDERED that:

1. Defendant's motion for summary judgment (ECF No. 83) is granted and the remaining claims against defendant Palagummi are dismissed.

2. Judgment is entered for defendants.

DATED: March 31, 2016

_____
ALLISON CLAIRE
UNITED STATES MAGISTRATE JUDGE